## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BARBARA CARSTARPHEN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:20-00506-N |
| | ) | |
| KILOLO KIJAKAZI, *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara Carstarphen brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her application for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*.[1] Upon due consideration of the parties' briefs (Docs. 16, 17, 18) and those portions of the certified transcript of the administrative record (Doc. 15) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** for further administrative proceedings.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings in this civil action, order the entry of final judgment, and conduct all post-judgment proceedings, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 21, 22).

With the Court's consent, the parties jointly waived the opportunity to present

# I.    *Procedural Background*

Carstarphen filed the subject DIB application with the Social Security Administration ("SSA") on October 25, 2018. After it was initially denied, Carstarphen requested, and on December 4, 2019, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On January 14, 2020, the ALJ issued an unfavorable decision on Carstarphen's application, finding her not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 15, PageID.82-97).

The Commissioner's decision on Carstarphen's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's unfavorable decision on September 24, 2020. (*Id.*, PageID.71-75). Carstarphen subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

---

oral argument. (*See* Docs. 20, 23).

## II.     *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision

reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the evidence is not required. In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) (unpublished) ("The question is not, as Werner suggests, whether ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." (footnote omitted)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L.Ed.2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a

massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and

---

finding.").

the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397,

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

and *Newton*, 209 F.3d at 455)).

Eligibility for DIB requires a showing that the claimant is under a disability, 42 U.S.C. § 423(a)(1)(E), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age,

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per

curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.    *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Carstarphen met the applicable insured status requirements through December 31, 2023, and that she had not engaged in substantial gainful activity since the alleged disability onset date of October 19, 2018.[7] (Doc. 15, PageID.87). At Step Two,[8] the ALJ determined that Carstarphen had the following severe impairments: osteoarthritis of the neck, left shoulder, hands, knees, and feet; mild bilateral hip osteoarthrosis; lumbar disc degeneration; thoracic spine degenerative disc disease; peripheral neuropathy; carpal tunnel syndrome; hypertension; diabetes mellitus; and obesity. (Doc. 15, PageID.88). At Step Three,[9] the ALJ found that Carstarphen did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix

---

[7] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211.

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.'" (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.'" *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[9] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 15, PageID.88).

At Step Four,[10] the ALJ determined that Carstarphen had the residual functional capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b),[11]

_____

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[11] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light,

except that she can perform no more than frequent handling bilaterally; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to extreme temperatures and hazards, like machinery and unprotected heights." (Doc. 15, PageID.88-93). Based on the RFC, the ALJ found that Carstarphen was capable of performing past relevant work as a phlebotomist. (*Id.*, PageID.93-94). Thus, the ALJ found that Carstarphen was not under a disability as defined by the Social Security Act from the disability onset date through the date of the ALJ's decision. (*Id.*, PageID.94).

## IV.   *Analysis*

### a.   **Impairments in Combination**

The ALJ's Step Three analysis consists, in its entirety, of the following two sentences: "The claimant does not have an impairment or combination of

---

medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). The objective record before the undersigned fails to contain the objective findings and clinical signs set forth in any of the listing sections pertaining to the claimant's severe impairments." (Doc. 15, PageID.88). Carstarphen argues that these conclusory statements, standing alone, are inadequate to show that the ALJ properly considered her impairments in combination, and that the decision otherwise fails to explain how the ALJ did so. *See* 20 C.F.R. § 404.1523(c) ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, we will consider the combined impact of the impairments throughout the disability determination process."). After careful consideration, the undersigned finds no reversible error in this regard.

In arguing this claim, Carstarphen has exposed some tension in this circuit's published precedents, which demands careful examination to resolve. The Eleventh Circuit "has a well-established approach to resolving conflicts in our precedent. We are obligated, if at all possible, to distill from apparently conflicting prior panel decisions a basis of reconciliation and to apply that reconciled rule. When making this determination, we are mindful that only the holdings of prior decisions bind us. If we

cannot reconcile our caselaw, we must follow the earliest precedent that reached a binding decision on the issue." *Williams v. Aguirre*, 965 F.3d 1147, 1163 (11th Cir. 2020) (citations and quotation omitted). *Accord, e.g.*, *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1328 (11th Cir. 2020)

Carstarphen argues that *George Bowen v. Heckler*, 748 F.2d 629 (11th Cir. Dec. 13, 1984), sets the relevant controlling standard: "[W]here, as here, a claimant has alleged a multitude of impairments, a claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling. In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." 748 F.2d at 635. However, that broad statement cannot be read in isolation, but rather must be read in the context in which it was made.

After considering the hearing testimony and exhibits and medical reports in the record, the ALJ in *George Bowen* concluded, "[w]ithout further explanation, … that [the claimant] was 'not suffering from an impairment or a combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least 12 continuous months [and that he] retain[ed] the functional capacity to perform his customary work as an orderly.' " 748 F.2d at 632. [12] Notwithstanding the ALJ's conclusory assertion that he had considered

---

[12] Moreover, "[n]either the Appeals Council nor the district court discussed whether Mr. Bowen's psychological and physical impairments, when considered in combination, would cause Mr. Bowen to be disabled within the meaning of the Act."

whether "a combination of impairments" rendered the claimant disabled, the *George Bowen* panel found reversible error where "[a] review of the record establishe[d] that the administrative law judge viewed the evidence from the standpoint of determining whether [the claimant] was, by virtue of *each condition alone*, statutorily disabled[,]" 748 F.2d at 634, but failed to explain *at all* how the combined effects of the claimant's impairments were considered in the disability determination process, as required by controlling Eleventh Circuit precedent predating *George Bowen*, *see id.*, by then-recent amendments to the Social Security Act, *see id.* at 635 & n.1, and by current Social Security regulations. *See* 20 C.F.R. § 404.1523(c). Thus, when considered in the context of the error found in that case—the ALJ's failure to give *any* explanation of how the claimant's impairments were considered in combination—*George Bowen*'s holding that "it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled[,]" 748 F.2d at 634, is far from an indisputable command that ALJs provide detailed analysis regarding the combined effects of claimants' impairments at every step of the sequential evaluation, as Carstarphen appears to argue.

Indeed, two years later, another panel of the Eleventh Circuit interpreted the relevant *George Bowen* holding far less strictly than Carstarphen does. In *John Jones v. Bowen*, 810 F.2d 1001 (11th Cir. Dec. 8, 1986) (per curiam), the claimant also argued "that the ALJ failed to consider the combined effects of his impairments[,]"

---

748 F.2d at 634.

with the defendant responding that "the ALJ considered the combined effect of [the claimant]'s impairment during an assessment of [his] residual functional capacity." 810 F.2d at 1006. After stating that "[i]t is now well settled that the ALJ must consider the combined effects of a claimant's impairments in determining whether he is disabled[,]" and quoting the same portion of *George Bowen* that Carstarphen relies on, *see supra*, the panel rejected the claimant's contention, holding:

> Here, the ALJ stated explicitly that the medical evidence did not establish the existence of an impairment or a combination of impairments which rendered Jones disabled under the Act. The Appeals Council reiterated the ALJ's determination regarding the combined effects of Jones's impairments. Of course, the Secretary could have set forth more specific findings regarding the effect of the combination of impairments on Jones's ability to work; however, given the ALJ's exhaustive consideration of the effect of these impairments on Jones's residual functional capacity, we conclude that the Secretary's findings were sufficient under the standards set forth above.

810 F.2d at 1006. *John Jones* held that the ALJ's explicit statement that the claimant did not suffer from a combination of impairments rendering him disabled, coupled with an "exhaustive consideration" of all the claimant's impairments in formulating the RFC at Step Four, was sufficient to satisfy *George Bowen*.[13]

---

[13]    In *Macia v. Bowen*, 829 F.2d 1009 (11th Cir. July 14, 1987) (per curiam), the panel summarily rejected the claimant's argument that "the ALJ failed to evaluate her combination of impairments of the right shoulder and left elbow," noting that "the ALJ considered these conditions at length and found that she had 'status post fracture right shoulder and left elbow.' " 829 F.2d at 1012. The panel considered this to be "specific and well articulated findings as to the effect of the combination of impairments" sufficient to satisfy *George Bowen*. *Id.* While not as illuminating as *John Jones*, *Macia* further suggests that *George Bowen* does not require the level of detail Carstarphen claims it does in addressing impairments in combination.

In *Gibson v. Heckler*, 779 F.2d 619 (11th Cir. Jan. 10, 1986), the claimant argued, *inter alia*, that "the ALJ's conclusory statement that all impairments were

*Wheeler v. Heckler*, 784 F.2d 1073 (11th Cir. Mar. 18, 1986) (per curiam), issued between *George Bowen* and *John Jones*, admittedly muddies the issue somewhat. There, the panel, while finding it "not entirely clear that appellant adequately presented this issue for review, [nevertheless] address[ed] what [the panel] fe[lt wa]s appellant's further contention that the Secretary considered his impairments only on an individual basis and thus erroneously failed to consider whether the impairments combined to prevent appellant from performing his past work." 784 F.2d at 1076. The panel held that "[t]he record indicates this contention is unfounded[,]" explaining:

---

considered in combination is an inadequate basis for th[e] court's review because the ALJ did not state the weight accorded each impairment and the reason for his decision on each impairment." 779 F.2d at 622-23. The panel agreed that reversible error was shown because the ALJ considered and discussed only some of the claimant's impairments but failed to address other claimed impairments, much less "discuss whether these claimed impairments were sufficiently severe—either singularly or in combination—to create a disability." *Id.*at 623. The panel also agreed that "[t]he ALJ … failed to state the weight accorded each item of impairment evidence and the reasons for his decisions on such evidence." *Id. Gibson* did not cite *George Bowen* at all, and the undersigned does not find it instructive on the issue of how much analysis an ALJ is required to provide to show that impairments were considered in combination, since the error in *Gibson* was the ALJ's failure to address all of the claimant's alleged impairments. Because some of the claimant's alleged impairments were not even considered singly, they necessarily were also not considered in combination with all other impairments.

*Walker v. Bowen*, 826 F.2d 996 (11th Cir. Sept. 8, 1987) (per curiam), contrary to Carstarphen's argument, is unenlightening for similar reasons. While the *Walker* panel did uncritically quote the relevant holding of *George Bowen* in finding reversible error, that error, similar to *Gibson*, was the ALJ's failure to discuss some of the claimant's impairments at all when determining the RFC. *See* 826 F.2d at 1001 ("It is clear that in this case the ALJ did not consider the combination of Walker's impairments before determining her residual functional capacity. The ALJ made specific reference only to Walker's left ankle and obesity. The ALJ's findings do not mention Walker's arthralgias in the right knee, phlebitis in the right arm, hypertension, gastrointestinal [sic] problems, or asthma, except to the extent that these 'subjectiv[e] complain[t]s do not establish disabling pain.' Furthermore, Walker complains of pain in both legs.").

> The ALJ states in his decision that "based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months." It is clear the ALJ considered the combination issue.

*Id. Wheeler* did not cite *George Bowen*, or indeed any case law, in reaching this holding.

In *Lawrence Jones v. Department of Health & Human Services*, 941 F.2d 1529 (11th Cir. 1991) (per curiam), the panel expressly relied on the foregoing *Wheeler* holding, without discussing *George Bowen* or *John Jones*, in rejecting the claimant's argument "that the ALJ failed properly to consider the combined effect of his pain and the side effects of pain medication[,]" concluding:

> Similarly [to *Wheeler*, h]ere, the ALJ specifically found that while Jones "has severe residuals of an injury to the left heel and multiple surgeries on that area," he does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4." The ALJ's determination evidences consideration of the combined effect of appellant's impairments.

941 F.2d at 1533 (footnote omitted). While *Lawrence Jones* appears to have held that the ALJ's conclusory finding was sufficient to show that the ALJ considered all impairments in combination "throughout the disability determination process[,]" 20 C.F.R. § 404.1523(c), it should be noted that that conclusory finding was specifically relevant to the Step Three determination of whether the claimant met or medically equaled a Listing.

*Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002) (per curiam), would later specifically apply *Lawrence Jones* in the Step Three context. In that case, the district

court, in its opinion reversing the Commissioner's final decision, stated in relevant part: "Although in his findings, the ALJ stated that Plaintiff did not meet or equal a Listing, the ALJ did not discuss the cumulative effects of Plaintiff's impairments." 284 F.3d at 1224 (quotation and italics omitted). The *Wilson* panel disagreed, holding:

> In rejecting Wilson's claim of disability, however, the ALJ specifically stated that "the medical evidence establishes that [Wilson] had [several injuries] which constitute a 'severe impairment', but that he did not have an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." (emphasis added). The ALJ's determination constitutes evidence that he considered the combined effects of Wilson's impairments.

*Id.* (citing *Lawrence Jones*, 941 F.2d at 1533).

Carefully considering the foregoing precedents, the undersigned harmonizes them as follows:

- *George Bowen* sets the general standard that, "where … a claimant has alleged a multitude of impairments, … it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." 748 F.2d at 635. To the extent the later *Wheeler* decision, and its progeny, hold that a bare statement that the ALJ has considered all impairments in combination is sufficient to show that the ALJ "consider[ed] the combined impact of the impairments *throughout the disability determination process*[,]" 20 C.F.R. § 404.1523(c), those holdings must yield to *George Bowen*.

- *George Bowen*, however, does not require the ALJ to "make specific and well-articulated findings as to the effect of the combination of impairments" *at every step of the sequential evaluation*. For instance, as *John Jones* held, *George Bowen* is satisfied where the ALJ states that all impairments have been considered in combination, and provides a thorough consideration of all impairments when determining the RFC at Step Four. *John Jones*, then, left the door open to allowing more conclusory findings on the combination issue at other steps.

- *Wilson* took the opening left by *John Jones*, squarely holding that a conclusory finding that a claimant does not have an impairment or combination of impairments that meets or medically equals a Listing is sufficient to show that the ALJ considered the claimant's impairments in combination at Step Three. *Also cf. Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) ("While Appendix 1 must be considered in making a disability determination, it is not required that the Secretary mechanically recite the evidence leading to her determination. There may be an implied finding that a claimant does not meet a listing.")

With these principles in mind, the undersigned now turns to Carstarphen's claim that the ALJ failed to adequately consider his impairments in combination.

To the extent the ALJ may have erred in failing to find a severe combination of impairments at Step Two, any such error is harmless, as the ALJ found that Carstarphen had other severe impairments and duly proceeded to the remaining

steps of the sequential evaluation. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("At step two the ALJ must determine if the claimant has any severe impairment. This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (per curiam) (unpublished) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."). Under *Wilson*, the ALJ's statement that Carstarphen "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the" Listings, while conclusory, is sufficient to show consideration of all impairments in combination at Step Three. And a review of the ALJ's decision at Step Four indicates a thorough consideration of the record evidence and all of Carstarphen's impairments. The only impairment Carstarphen specifically claims the ALJ failed to evaluate was obesity. However, the ALJ expressly considered Carstarphen's obesity at Step Four, finding: "After review of the medical evidence contained in the record, the undersigned finds that the claimant's obesity does not increase the severity of her other impairments. Consequently, any possible limitation arising out of the claimant's obesity has been reflected in the residual functional capacity determination stated herein." (Doc. 15, PageID.92).[14]

---

[14] Carstarphen argues that the ALJ failed to provide a "function-by-function

Accordingly, Carstarphen has failed to show reversible error regarding the ALJ's consideration of her impairments in combination.

### b.    Dr. Childs's Medical Opinion

Carstarphen's other claim of reversible error is that the ALJ improperly found not persuasive the medical opinion of her treating physician, Edward Childs, M.D. The undersigned agrees that reversible error has been shown on this point.

The Social Security regulations applicable to Carstarphen's application [15] define "medical opinion" as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: … (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping,

---

assessment" regarding the effects of her obesity on her other impairments as required by Social Security Ruling (SSR) 02-1p. (*See* Doc. 17, PageID.617). However, the ALJ correctly analyzed Carstarphen's obesity under the guidance set out in SSR 19-2p. (*See* Doc. 15, PageID.92). SSR 19-2p took effect May 20, 2019—almost eight months before the ALJ issued his decision—and stated that it "rescinds and replaces SSR 02-1p…" 2019 WL 2374244, at *1. Thus, the ALJ was not required to follow SSR 02-1p.

[15] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). The rules for evaluating medical opinions found in 20 C.F.R. § 404.1520c apply to DIB claims filed on or after March 27, 2017, such as Carstarphen's. *Compare* 20 C.F.R. § 404.1520c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. § 404.1527 (applicable to claims filed before March 27, 2017). The revisions also changed what constitutes a "medical opinion." *See* 20 C.F.R. § 404.1513(a)(2) (defining "medical opinion" while specifying that "the definition of medical opinion" found in § 404.1527 applies to claims filed before March 27, 2017).

or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513(a)(2). The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …, including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the Commissioner] will consider those medical opinions … from that medical source together using [the following] factors[,]" *id.*: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c).

"The most important factors … are supportability … and consistency…" 20 C.F.R. § 404.1520c(a). *Accord* 20 C.F.R. § 404.1520c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical

sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors … when … articulat[ing] how [the Commissioner] consider[ed] medical opinions and prior administrative medical findings in [the] case record." *Id.*[16]

---

[16]     Under the regulations applicable to claims filed before March 27, 2017, the medical opinion of a treating physician could be entitled to "controlling weight" in certain circumstances. *See* 20 C.F.R. § 404.1527(c)(2). However, the 2017 revisions "removed the 'controlling weight' requirement for all applications filed after March 27, 2017." *Yanes v. Comm'r, Soc. Sec. Admin.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021) (per curiam) (unpublished).

In *Simon v. Commissioner, Social Security Administration*, 1 F.4th 908 (11th Cir. June 9, 2021) ("*Simon I*"), a panel of the Eleventh Circuit acknowledged, in footnote four of its opinion, that "[t]he SSA amended its rules in 2017 to remove th[e] 'controlling weight' requirement" for treating physicians. 1 F.4th at 918 n.4 (citing 20 C.F.R. § 404.1520c). However, the panel also noted that "the current version of the regulation still instructs an ALJ to weigh all medical opinions in light of the '[l]ength of the treatment relationship,' the '[f]requency of examinations,' the '[p]urpose of the treatment relationship,' and the '[e]xtent of the treatment relationship.' " *Id.* (quoting 20 C.F.R. § 404.1520c). The panel thus concluded that "[t]hese factors continue to indicate the importance of treating physicians' opinions—especially where the physician has maintained a longstanding and consistent relationship with the claimant." *Id.*

However, that conclusion regarding the new rules, was dicta, as *Simon I* concerned a DIB application filed in 2015; thus the old rules concerning treating physicians clearly applied to it. Moreover, even that dicta appears to have been reconsidered, as the *Simon I* panel subsequently withdrew its opinion and replaced it with a new one on August 12, 2021. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 ("*Simon II*"). In *Simon II*, footnote four was revised to state, in full: "The [treating source 'controlling weight'] regulation … only applies to disability claims

The ALJ addressed Dr. Childs's medical opinion as follows:

> In October 2019, a medical source statement (physical) was completed by Edward Childs, M.D., who opined that the claimant could sit for six hours during an eight-hour workday; stand or walk for two hours during an eight-hour workday; and lift and/or carry twenty pounds occasionally to ten pounds frequently. Dr. Childs additionally concluded that the claimant could occasionally push and pull with arm and/or leg controls; occasionally perform gross manipulation; occasionally bend and/or stoop; and occasionally reach. He opined that the claimant could frequently perform fine manipulation; never climb stairs or ladders; never balance; never operate motor vehicles; and never work with or around hazardous machinery. According to Dr. Childs, the claimant would be absent from work about once a month due to impairments or treatment. Dr. Childs also completed a clinical assessment of pain form, in which he concluded that the claimant's pain was present to such an extent to be distracting to the adequate performance of daily activities. He also opined that the claimant's pain prevented her from maintaining attention, concentration, or pace for periods of at least two hours (Exhibit 10F).

> The undersigned does not find the opinions of Dr. Childs to be very persuasive, in that his conclusions regarding the claimant's limitations on sitting, standing, and walking, as well as his limitations on the use of the upper extremities, were too restrictive. The undersigned finds that Dr. Childs' opinion regarding being off task was inconsistent with his opinion on the ability to maintain attention, concentration, or pace for two hours. The undersigned emphasizes that Dr. Childs admitted

---

that were filed before March 27, 2017. Claims filed after that date are governed by a new regulation prescribing a somewhat different framework for evaluating medical opinions. *See* 20 C.F.R. § 404.1520c. Because Simon filed his claim in March of 2015, we need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise." *Id.* at 1104. And more recently, a panel of the Eleventh Circuit, albeit in an unpublished decision, held that the regulatory scheme applicable to claims filed on or after March 27, 2017, "no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion." *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) (per curiam) (unpublished).

that the claimant's diagnoses were not confirmed by objective medical findings. Further, the undersigned finds compelling that Dr. Childs noted that medication would aid in reducing the claimant's pain with no side effects or reduction in her level of functioning and that the claimant would not sometimes need to take unscheduled breaks.

(Doc. 15, PageID.92-93).

In finding Dr. Childs's opinion not persuasive, the ALJ properly considered the fact that Dr. Childs admitted that his opinion was not confirmed by objective findings, as whether a medical source provides "supporting explanations" for his or her opinion is relevant to determining the opinion's "supportability." 20 C.F.R. § 404.1520c(c)(1). However, an opinion's "supportability" is also determined by consideration of "objective medical evidence" from that medical source. *Id. See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019) (per curiam) ("[T]reating-physician opinions 'should not be considered in a vacuum, and instead, the doctors' earlier reports should be considered as the bases for their statements.' *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam). In other words, the ALJ should have interpreted Drs. Hernandez's and Assad's answers to the questionnaires in light of their treatment notes."). Moreover, an ALJ is required to explain how he or she considered *both* "the supportability *and* consistency factors" when addressing a medical opinion, 20 C.F.R. § 404.1520c(b)(2)—that is, in addition the opinion's "supportability," the ALJ must address its "consistency" "with the evidence from other medical sources and nonmedical sources in the claim..." *Id.* § 404.1520c(c)(2).

The ALJ provides no explanation at all of how some of the limitations in Dr. Childs's opinion are "too restrictive" compared with Dr. Childs's own treatment notes,

or with the evidence from other medical and nonmedical sources—i.e., he addressed only half of the "supportability" issue, and not at all the "consistency" issue. While the ALJ did thoroughly summarize the medical evidence of record prior to addressing Dr. Childs's opinion, there is nothing that so obviously discredits Dr. Childs's opinion that the ALJ can be said to have "state[d] with at least some measure of clarity the grounds for his decision." *Owens*, 748 F.2d at 1516. *Cf. Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1107 (11th Cir. 2021) ("Before an ALJ may reject a treating physician's opinions as inconsistent with other medical findings in the record, he or she must identify a 'genuine' inconsistency. It is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with the treating physician's opinion by proving no more than that the claimant's impairments are not all-encompassing." (citations and quotation omitted)). This Court will not, and indeed cannot, parse through the ALJ's summary of the record in search of evidentiary support for his decision to reject Dr. Childs's opinion; to do so would be impermissibly "affirm[ing] simply because some rationale might have supported the ALJ's conclusion." *Owens*, 748 F.2d at 1516.

With regard to the ALJ's finding that Dr. Childs's "opinion regarding being off task was inconsistent with his opinion on the ability to maintain attention, concentration, or pace for two hours[,]" the ALJ failed to explain why he found the one limitation persuasive enough to discredit the other. Similarly, the ALJ fails to explain how Dr. Childs's opinion that Carstarphen "would not sometimes need to take unscheduled breaks" necessarily detracts from the rest of his opinion. Finally, while

the ALJ found "compelling that Dr. Childs noted that medication would aid in reducing the claimant's pain with no side effects or reduction in her level of functioning[,]" this opinion was given by circling a form answer, and it provided no detail as to what kinds of medication Dr. Childs believed would be helpful, or how much it would help. Even if that was a valid consideration, it still does not make up for the ALJ's failure to adequately address the "most important" factors of "supportability" and "consistency."[17] Accordingly, the undersigned finds that the ALJ reversibly erred in failing to articulate adequate grounds for finding Dr. Childs's medical opinion not persuasive.

### c.    Remedy

As relief, Carstarphen requests "that the decision of the Commissioner be reversed for payment of benefits[,]" with "remand[] for further development" only an alternative request. (Doc. 17, PageID.620). The Eleventh Circuit has recognized that reversal with remand to the Commissioner for further proceedings is generally warranted where, as here, "the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). While this Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence

---

[17] The ALJ did find persuasive the prior administrative medical findings of state agency consultant Alton James, M.D., and the RFC matches the limitations given by Dr. James. (*See* Doc. 15, PageID.89). However, the ALJ only provided a conclusory statement that Dr. James's opinions "were supported by and consistent with the record presented at the hearing level." (*Id.*). This does nothing to illuminate why the ALJ found Dr. Childs's opinions were not supported by or consistent with the record.

establishes disability without any doubt[,]" *id.,* Carstarphen has failed to convince the undersigned that this standard is met here.[18] The only reversible error Carstarphen has shown is that the ALJ failed to adequately articulate his reasons for finding a medical opinion not persuasive. Carstarphen has failed to conclusively show that, on remand, the ALJ cannot possibly articulate adequate grounds supported by substantial evidence to again find Dr. Childs's opinion not persuasive.[19]

---

[18] *Compare Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts … The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain; presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982."), *with Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) ("Though we have found that the ALJ erred in his application of the legal standards, at this time we decline to enter an order requiring entitlement to disability benefits. While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that the report of Dr. Morse is to the contrary. Consequently, it is appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards."), *and Hildebrand v. Comm'r of Soc. Sec.*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854238, at *7 (M.D. Fla. May 4, 2012) ("The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence; but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case."), *report and recommendation adopted*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854249 (M.D. Fla. May 21, 2012).

[19] Of course, the undersigned expresses no view on what persuasive value Dr. Childs's medical opinion is due on remand, only that the ALJ must sufficiently show he followed the "articulation requirements" of § 404.1520c when addressing the opinion.

Moreover, the United States Supreme Court has cautioned that a court reviewing an agency decision "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Orlando Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353, 154 L. Ed. 2d 272 (2002). *See also McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986) ("[I]t would be an affront to the administrative process if courts were to engage in direct fact finding in these Social Security disability cases. The Congressional scheme is that, governed by standards promulgated by Congress and interpreted by the courts, the administrator is to find the facts case by case and make the determination of presence or absence of disability, and that, in the course of judicial review, the courts are then to respect the administrative determination."). The undersigned finds no reason to believe this case is one of the "rare circumstances" where remand to the agency is not the proper remedy.[20]

---

[20] Carstarphen perfunctorily argues that this Court should reverse and order an award of benefits because she has suffered an "injustice" like that in *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This case, however, is a far cry from *Walden*, where the court found the claimant had "suffered an injustice" and rendered judgment in her favor "[d]ue to the perfunctory manner of the hearing, the quality and quantity of errors pointed out, and the lack of substantial evidence to support the ALJ's decision…" 672 F.2d at 840. Here, there is no indication that the ALJ's hearing was "perfunctory," Carstarphen has only identified a single reversible error, and she has not convinced the undersigned that substantial evidence could not still support the Commissioner's decision to deny benefits once the proper legal standards are applied. *See Truesdell v. Comm'r of Soc. Sec.*, No. 20-13416, 2022 WL 401548, at *7 (11th Cir. Feb. 10, 2022) (per curiam) (unpublished) ("We cannot reverse and remand to award Truesdell benefits because, unlike in *Davis* and *Walden*, Truesdell did not

Accordingly, the Commissioner's final decision denying Carstarphen's application for benefits is due to be **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of § 405(g) for further administrative proceedings.

## V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Carstarphen's October 25, 2018 DIB application is **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Carstarphen a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292, 113 S. Ct. 2625, 125 L. Ed. 2d 239 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), the Court hereby grants Carstarphen's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until 30 days after the date of receipt of a notice of award of benefits from the SSA, should Carstarphen be awarded benefits on the subject application

---

establish 'disability without any doubt' and the administrative law judge was not 'in error in several critical respects.' *See Davis*, 985 F.2d at 534; *Walden*, 672 F.2d at 837. Truesdell's hearing wasn't 'perfunctory,' and the administrative law judge didn't apply an improper legal standard or totally disregard unrefuted evidence. *See Walden*, 672 F.2d at 837, 840. Nor did the administrative law judge fail to address Truesdell's subjective assessment, to make findings of credibility, or to develop a full and fair record. *See id.*").

following this remand.[21] Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." If multiple award notices are issued, the time for filing a § 406(b) fee motion shall run from the date of receipt of the latest-dated notice.

Final judgment shall issue separately hereafter in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 29th day of March 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[21] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").